IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Brian Royce Parris,                    )
                                       )    Civil Action No. 8:13-02318-TMC-JDA
                    Plaintiff,         )
                                       )
         vs.                           )    **<u>REPORT AND RECOMMENDATION</u>**
                                       )    **<u>OF MAGISTRATE JUDGE</u>**
Carolyn W. Colvin,                     )
Commissioner of Social Security,       )
                                       )
                    Defendant.         )

         This matter is before the Court for a Report and Recommendation pursuant to 28

U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.  Plaintiff brought this

action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final

decision of Defendant Commissioner of Social Security ("the Commissioner"), denying

Plaintiff's claims for disability insurance benefits ("DIB").  For the reasons set forth below,

it is recommended that the decision of the Commissioner be affirmed.

## **<u>PROCEDURAL HISTORY</u>**

         On June 28, 2010, Plaintiff filed an application for DIB alleging an onset of disability

date of December 19, 2008.[1]  [R. 135–141.] Plaintiff's claims were denied initially and upon

reconsideration by the Social Security Administration ("the Administration").  [R. 102,

116–21, 125–31.] Plaintiff requested a hearing before an administrative law judge ("ALJ"),

and, on January 6, 2012, ALJ Ivar E. Avots conducted a de novo hearing on Plaintiff's

claims.  [R. 64–100.]

------

         [1]Plaintiff amended his alleged onset date to December 11, 2010. [R. 11.]

The ALJ issued a decision on June 27, 2012, finding Plaintiff not disabled under the Social Security Act ("the Act"). [R. 11–23.] At Step 1,[2] the ALJ found Plaintiff met the insured status requirements of the Act through March 31, 2014, and he had not engaged in substantial gainful activity since December 11, 2010. [R. 13, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had a severe impairment of anxiety. [R. 13, Finding 3.] The ALJ also determined Plaintiff had the following non-severe impairments: history of heart murmur; history of hepatitis C; diffuse esophageal spasm; allergic rhinitis; history of alcohol dependence; tremors in his hands; arthritis in his hands, feet, knees and hips; and degenerative disc disease and degenerative joint disease with mild bilateral changes in his knees and fingers. [R. 13–17.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 17–20, Finding 4.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> I find that the claimant has the residual functional capacity to perform work at all exertional levels as defined in 20 CFR 404.1567, with moderate mental limitations but in spite of these he can concentrate, persist and work at pace to do simple, routine repetitive tasks at up to level three commonsense reasoning per the DOT, for extended periods say 2-hour periods in an 8-hour day, have no direct contact with the public, but can interact appropriately with co-workers and supervisors in a stable routine setting.

---

[2]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

[R. 20, Finding 5.] Based on this RFC, at Step 4, the ALJ determined Plaintiff was unable to perform his past relevant work as a stock control inventory clerk, bookkeeper, and quality control inspector. [R. 21, Finding 6.] Considering Plaintiff's age, education, work experience, and RFC, however, the ALJ determined that there are jobs that existed in significant numbers in the national economy that Plaintiff could perform. [R. 22–23, Finding 10.] Accordingly, the ALJ concluded Plaintiff had not been under a disability, as defined by the Act, from December 11, 2010, through the date of the decision. [R. 23, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision, but the Council declined review. [R. 1–6.] Plaintiff filed this action for judicial review on August 26, 2013. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and claims the ALJ erred by

(1)   failing to find in the RFC that Plaintiff had exertional and manipulative limitations due to his degenerative disc disease of the cervical spine, arthritis in the hands and knees, hepatitis C, and cardiac murmur;

(2)   improperly exalting the opinions of non-examining physicians over the opinion of Plaintiff's treating physician, Dr. Roslyn Harris ("Dr. Harris"); and

(3)   at Step 5, identifying two of three occupations that would support a finding of disability under Medical-Vocational Rule 202.06.

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence because the ALJ

(1)   reasonably determined Plaintiff's RFC and gave proper consideration to Plaintiff's severe and non-severe impairments;

3

    (2)     reasonably evaluated the opinions of Dr. Harris; and,

    (3)     reasonably found that Plaintiff could perform other jobs existing in significant numbers in the national economy.

Accordingly, the Commissioner requests that the Court affirm the ALJ's decision.

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result

as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See,*

*e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).  Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C.

§ 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured

for benefits, who are not of retirement age, who properly apply, and who are under a

disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or which
> has lasted or can be expected to last for a continuous period
> of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.     The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations

have reduced the statutory definition of disability to a series of five sequential questions.

*See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency"

in considering disability claims).  The ALJ must consider whether (1) the claimant is

engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the

impairment meets or equals an impairment included in the Administration's Official Listings

of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents

the claimant from performing past relevant work; and (5) the impairment prevents the

claimant from having substantial gainful employment.  20 C.F.R. § 404.1520.  Through the

fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699

F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day

8

of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that,

9

when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

## C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

## D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[4] with the physical and mental demands of the kind

---

[4]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a).

of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

### E.     *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[5] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not

---

[5]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

12

### III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition

for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 404.1527(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the

14

pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v.*

*Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms."  *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

16

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).  Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## <u>APPLICATION AND ANALYSIS</u>

**Treating Physician Opinions**

Plaintiff takes issue with the ALJ's weighing of the opinion of Dr. Harris, which described Plaintiff as having severe anxiety, poor ability to sustain concentration or sustain pace due to severe anxiety and poor coping skills, suffering from joint instability with reduced grip strength, and further assessed Plaintiff as being able to lift 20 pounds occasionally. [Doc. 12 at 12.] Plaintiff contends the ALJ improperly discredited Dr. Harris's opinion because her conclusions are well supported by evidence of record, including MRIs and radiographys.  [*Id.* at 12–13.]  Further, Plaintiff argues the ALJ improperly gave more weight to state physicians, only one of whom examined Plaintiff.  [*Id.* at 14.] In contrast, the

Commissioner contends the ALJ properly weighed Dr. Harris's opinion and found it inconsistent with other substantial evidence in the record. [Doc. 13 at 14.] The Commissioner points out that the ALJ also found Dr. Harris's opinions inconsistent with Plaintiff's daily activities. [*Id.* at 15.] The Commissioner also contends the ALJ's reliance on the testimony of non-examining physicians is proper when it is consistent with the record; and, in this case, the ALJ found them to be consistent. [*Id.* at 17.] The Court agrees with the Commissioner that the ALJ properly weighed Dr. Harris's opinions, and he sufficiently explained why he accorded it little weight.

### *Dr. Harris's Opinions*

Treatment records show Plaintiff was seen by Dr. Harris on April 23, 2008, for a comprehensive physical exam. [R. 301.] Dr. Harris noted normal activity and energy levels; no muscle or joint pain, weakness, stiffness, swelling or inflammation; no restriction of motion, cramping or atrophy; no difficulties in motor strength, gait, sensation, level of consciousness, memory, concentration, mood, affect or general thought process; no abnormalities in mood, affect, behavior, coping skills or sleep patterns; and no suicidal ideation or attempt. [R. 301–02.] Dr. Harris also noted no edema or varicosities of the extremities; gait intact, station and posture are normal; full, painless range of motion of the neck with normal strength and tone; and no misalignment or tenderness with full range of motion with normal stability strength and tone in the left/left upper, and right/left lower extremities. [R. 302–03.] Plaintiff was prescribed mobic for joint pain in the hands. [R. 303.]

Dr. Harris saw Plaintiff again on July 24, 2008, for complaints of intermittent chest pain in the left chest with no other associated symptoms noted. [R. 289.] A review of

Plaintiff's general systems indicated normal activity and energy level; no muscle or joint pain, weakness, stiffness, swelling or inflammation; no restriction of motion, cramping or atrophy; no difficulties in motor strength, gait, sensation, level of consciousness, memory, concentration, mood, affect or general thought process; and no abnormalities in mood, affect, behavior, coping skills or sleep pattern. [*Id.*] On physical exam, Dr. Harris noted Plaintiff's cardiovascular system had regular rate and rhythm with no murmurs, gallops, rubs or abnormal heart sounds. [R. 290.] Dr. Harris also noted no edema or varicosities of the extremities; and full range of motion, normal rotation and normal strength and tone in the spine, ribs and pelvis.   [R. 290–91.]

On June 2, 2009, Plaintiff returned to Dr. Harris for a recheck stating he has been under tremendous stress due to the loss of his job and taking care of his wife. [R. 287.] Treatment notes from Dr. Harris's examination indicate normal activity and energy level; normal respiratory effort; and regular heart rate and rhythm with no murmurs, gallops, rubs or abnormal heart sounds.  [R. 287–88.] Dr. Harris prescribed medication for anxiety and for back sprain. [R. 288.]

On June 24, 2010, Plaintiff presented to Dr. Harris with complaints of hand trouble and a history of arthritis in his hands with severe pain.  [R. 285.]  Plaintiff was noted to be very anxious and nervous. [*Id.*]  A review of his musculoskeletal and neurological systems noted no difficulties in motor strength, gait, sensation, level of consciousness, memory, concentration, mood, affect, or general thought process. [*Id.*] Dr. Harris prescribed medication for Plaintiff's hand pain and anxiety.  [*Id.*]

On November 16, 2010, Plaintiff saw Dr. Harris so that she could complete "paperwork for severe anxiety." [R. 332.] Notes from Plaintiff's physical exam show normal

respiratory effort; no edema or vericosities of the extremities; but, Plaintiff was anxious.

[*Id.*]  Dr. Harris completed the paperwork entitled "*Medical Opinion Re: Ability To Do Work-Related Activities (Mental)*" indicating Plaintiff's limitations due to severe anxiety as follows:

> Plaintiff's ability to function in the following areas is limited but satisfactory:
>
> * remember work-like procedures
> * understand and remember very short and simple instructions
> * carry out very short and simple instructions
> * be aware of normal hazards and take appropriate precautions
>
> Plaintiff's ability to function in the following areas is seriously limited, but not precluded:
>
> * maintain regular attendance and be punctual within customary, usually strict tolerances
> * sustain an ordinary routine without special supervision
> * make simple work-related decisions
> * ask simple questions or request assistance
> * respond appropriately to changes in a routine work setting
>
> Plaintiff has poor or no useful ability to function in the following areas:
>
> * maintain attention for two hour segment
> * work in coordination with or proximity to others without being unduly distracted
> * complete a normal workday and workweek without interruptions from psychologically based symptoms
> * perform at a consistent pace without an unreasonable number and length of rest periods
> * accept instructions and respond appropriately to criticism from supervisors
> * get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes
> * deal with normal work stress

[R. 344–46.]

With respect to Plaintiff's mental abilities and aptitudes to perform semi-skilled and skilled work, Dr. Harris opined that, as a result of Plaintiff's severe anxiety, he had satisfactory ability to understand and remember detailed instruction; was seriously limited

in his ability to set realistic goals or make plans independently of others, or deal with stress

of semi-skilled and skilled work; and had poor or no ability to carry out detailed instructions.

[R. 346.]  With respect to Plaintiff's mental abilities to do particular types of jobs, Dr. Harris

opined that, as a result of his severe anxiety, Plaintiff had satisfactory ability to adhere to

basic standards of neatness and cleanliness; but had no or poor ability to interact

appropriately with the general public; maintain socially appropriate behavior; travel in

unfamiliar place[s], or use public transportation. [R. 347.] Dr. Harris also indicated that

Plaintiff had poor coping skills, would be absent from work more than three times a month,

but would be able to manage benefits in his best interest.  [R. 348.]

Plaintiff saw Dr. Harris on May 31, 2011, for an exam and medication refill. [R. 360.]

 Plaintiff reported feeling stressed and overwhelmed, and reported crying even on his

medicines.  [*Id.*]  Upon examination, Dr. Harris noted no difficulties in motor strength, gait,

sensation, level of consciousness, memory, concentration, mood, affect or general thought

processes. [*Id.*] Dr. Harris noted normal respiratory effort, and no edema or varicosities of

the extremities.  [R. 361.]

On a form entitled "*Arthritis Medical Source Statement*," dated June 14, 2011, Dr.

Harris noted that she has treated Plaintiff 3–4 times a year since 2003 for pain in his knees

and hands which was daily, severe, and continuous.  [R. 354.] Dr. Harris noted Plaintiff had

joint instability in his knees, reduced grip strength in his hands, and severe anxiety. [*Id.*]

With respect to Plaintiff's functional limitations if placed in a competitive work environment,

Dr. Harris opined that Plaintiff

       *     can walk for less than 1 block
       *     can sit for 30-45 minutes before needing to get up and stand for 10-15
            minutes before needing to sit down or walk around

* can sit/stand/walk less than 2 hours in an 8 hour day
* requires a job that allows shifting positions at will from sitting, standing or walking
* does not need to include periods of working around during an 8 hour period
* requires unscheduled breaks every 30 minutes for 15-20 minutes before returning to work and will need to be able to lie down during that break
* does not need to use a cane or other assistive device while walking
* can lift/carry 10 pounds occasionally, 10-20 pounds rarely and never 50 pounds
* can rarely twist and can never stoop, crouch, or climb ladders or stairs
* has significant limitations in reaching, handling and fingering
* will be off task 25% or more of workday
* is incapable of tolerating even "low stress" work
* will have good and bad days
* will be absent from work more than 4 days per month

[R. 354–57.]

On October 27, 2011, Plaintiff saw Dr. Harris for an exam and medication refill. [R. 358.] Dr. Harris noted Plaintiff had significant anxiety but was doing well with his current medication; Plaintiff stated his medicines work well. [*Id.*] Dr. Harris noted Plaintiff gets overwhelmed with the least amount of stress, and looked a bit shaky when discussing his wife. [*Id.*] On physical exam, Dr. Harris noted Plaintiff was well nourished, had normal posture and gait, and was well hydrated. [*Id.*] Plaintiff showed normal muscle strength in all muscles and reflexes were normal. [R. 359.] Dr. Harris also noted normal strength and tone in the right and left upper and lower extremities. [*Id.*]

### ALJ's Treatment of Dr. Harris's Opinions

The ALJ stated that he took into full consideration the opinion of Plaintiff's primary care physician Dr. Harris noting that, "[w]ith the degree of restriction given by Dr. Harris, [Plaintiff] would be unable to perform any substantial gainful work activity. [R. 15–16.] Upon

22

consideration of Dr. Harris's treatment notes and the record as a whole, however, the ALJ

concluded

> I do not find the opinion of Dr. Harris to be adequately supported by medically acceptable clinical and laboratory diagnostic techniques or to be consistent with the other substantial evidence in the record. I, therefore, do not find it to be entitled to controlling weight (SSR 96-2p). Dr. Harris's opinion was formulated by filling out a questionnaire, primarily by checking boxes. In giving an answer to Question 11a, regarding how many blocks the claimant can walk, Dr. Harris crossed out the answer "4" and changed it to "less than 1," without explanation (Ex. 18F, p.2), where the claimant himself has admitted he can walk one block per 4E and 3E. Dr. Harris's opinion is, further, wholly unsupported by the mild to minimal abnormal musculoskeletal clinical findings in her reports, the radiology reports, and the consultative examination. The clinical reports of Dr. Harris show only sporadic complaints of a musculoskeletal nature which have been treated conservatively and have required no further intervention from other sources. There is no record in Dr. Harris's clinical reports of any persistent abnormality or functional limitation related to arthritis. The reports of Dr. Harris, further, appear to be overly sympathetic to her patient. For all these reasons, I have given the assessment of Dr. Harris little weight.

[R. 16.]

With respect to Dr. Harris's opinion regarding Plaintiff's mental limitations, the ALJ

stated that he took into full consideration the opinion of Dr. Harris that Plaintiff was

considerably more restricted in the areas of mental functioning outlined in "paragraph B"

of the Listings and that he was likely to have, among other things, "poor ability to maintain

attention for two-hour segments, work in proximity to others without being unduly

distracted, and complete a normal work week without interruption from psychologically

based symptoms." [R. 19.] Upon consideration of the evidence of record, however, the

ALJ concluded

I do not find the opinion of Dr. Harris to be adequately supported by medically acceptable clinical and laboratory diagnostic techniques or to be consistent with the other substantial evidence in the record. I, therefore, do not find it to be entitled to controlling weight (SSR 96- 2p). Dr. Harris's opinion was formulated by filling out a questionnaire, primarily by checking boxes, and is wholly unsupported by objective clinical findings. The clinical reports of Dr. Harris show only that the claimant has consistently been observed to be anxious. He has not had any reported persistently severe mental abnormalities. Dr. Harris has treated him conservatively with Xanax since at least 2007 with no medication increase since June 2009. Dr. Harris has not suggested psychiatric intervention or other, more intensive types of mental health treatment. Dr. Harris's notes reflect that he has, in fact, responded well to treatment with Xanax and has continued to independently carry out his activities of daily living, as well as care for his ex-wife. I have, therefore, given the assessment of Dr. Harris little weight.

[*Id.*]

### *Discussion*

Plaintiff contends that Dr. Harris's opinions are well supported by evidence of record, including "the MRI of the cervical spine, which shows advanced degenerative disc disease (R 263), the radiograph of the knees which shows degenerative changes bilaterally, albeit mild (R 309), Mr. Parris' consistent complaints of hand pain (R 285, 342), the enlargement of the MIP joints described by Dr. Korn, and the observations of both consulting examiners that Mr. Parris displays tremulousness (306, 313)." [Doc. 12 at 13.] Plaintiff further contends that an "EKG shows mild valve regurgitation and tricuspid regurgitation (R 281) . . . Radiographic evidence of the hands shows bony degenerative changes of the fingers (R 310)." [Doc. 14 at 1.]  Additionally, Plaintiff argues that both of the opinions of Dr. Harris were thoughtfully done and she made no attempt to exaggerate Plaintiff's limitations. [Doc. 12 at 15.] Plaintiff argues the ALJ inverted the normal hierarchy

for assessing opinion statements and reached an "extreme conclusion" that Plaintiff had no exertional or manipulative limitations "producing a denial of benefits for a [Plaintiff] who would otherwise be awarded on the light grid table" and raising red flags.  [*Id.* at 16.]

The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist."  *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).  Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant."  *Id.* (*quoting Mastro*, 270 F.3d at 178).  While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. § 404.1527(c).

The opinion of a treating physician is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).  Additionally, Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected.  Treating source medical opinions are still entitled to deference and must be weighed using all of

> the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996).  However, not every opinion offered by a treating source is entitled to deference:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions.  In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work.  Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner.  Such opinions on these issues must not be disregarded.  However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1527(e) (stating an ALJ does not have to "give any special significance to the source of an opinion on issues reserved to the Commissioner," such as an opinion that the claimant is disabled, the claimant's impairment or impairments meets or equals a listing, or the claimant has a certain RFC).

A review of the ALJ's decision shows that the ALJ evaluated Dr. Harris's opinions in accordance with 20 C.F.R. § 404.1527, and he adequately indicated and explained the weight he assigned to Dr. Harris's opinions based on a lack of support in Dr. Harris's own treatment notes. *Craig*, 76 F.3d at 590 (explaining that an ALJ may properly reject a treating physician's opinion if the physician's "own medical notes [do] not confirm his determination of 'disability.'").  The ALJ accurately summarized Dr. Harris's treatment notes which consistently reported: normal activity and energy levels; no muscle or joint pain,

26

weakness, stiffness, swelling or inflammation; no restriction of motion, cramping or atrophy; no difficulties in motor strength, gait, sensation, level of consciousness, memory, concentration, mood, affect or general thought process; no abnormalities in mood, affect, behavior, coping skills or sleep patterns; and no suicidal ideation or attempt; no edema or varicosities of the extremities; gait intact, station and posture are normal; full, painless range of motion of the neck with normal strength and tone; and no misalignment or tenderness with full range of motion with normal stability strength and tone in the left/left upper, and right/left lower extremities.  [*See* R. 285, 289–91, 301–03.]

While Dr. Harris indicated Plaintiff had psychological limitations that would affect his ability to work a regular job, Dr. Harris's October 27, 2011, treatment notes indicated that Plaintiff had significant anxiety but was doing well with his current medication.  [R. 358.]  Further, the ALJ pointed out that Dr. Harris treated Plaintiff conservatively with Xanax since at least 2007 with no mediation increase since June 2009 and no suggested psychiatric intervention or other more intensive types of mental health treatment recommended. [R. 19.]  Further, the ALJ noted that Dr. Harris's treatment notes reflected that he had, in fact, responded well to treatment with Xanax and had continued to independently carry out his activities of daily living, as well as care for his ex-wife. [*Id.*]

Plaintiff disagrees with the ALJ's determination and argues that Dr. Harris's opinions are well-supported by appropriate clinical and diagnostic medical findings and should, by virtue of being opinions from a treating physician, be weighed more favorably than state consultant physicians.  Plaintiff, however, merely recites the evidence already considered by the ALJ and fails to point to any evidence ignored by the ALJ, or any other substantive evidence of record supporting Dr. Harris's findings or contradicting the ALJ's findings.  *See*

*Reid v. Commissioner*, 769 F.3d 861, 865 (4th Cir. 2014) (finding that the Commissioner's decision was based on the entire record and supported by substantial evidence where the plaintiff failed to point to any specific piece of evidence not considered by the Commissioner that might have changed the outcome of the disability claim).  Accordingly, after finding Dr. Harris's opinions unsupported by her own treatment notes and by the weight of the evidence, the ALJ was entitled to give Dr. Harris's opinion little weight and to rely on the opinions of the state agency doctors.  *See* 20 C.F.R. § 404.1527(e)(2)(i)("State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation.");  *cf. Radford v. Colvin*, 734 F.3d 288, 295–96 (4th Cir. 2013) (finding the ALJ erred by totally and without explanation rejecting the opinions of treating physicians in favor of the state medical examiners).

As required for treating physician opinions, the ALJ must also explain the weight he gives to the opinions of agency doctors, and such opinions are evaluated using the same factors used for other medical sources.  *See* 20 C.F.R. § 404.1527(e)(2)(ii); *see also Smith*, 795 F.2d at 345–46 (stating that the opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner).  Here, the ALJ found the agency physician opinions with respect to Plaintiff's physical and mental limitations were more reliable and consistent with the record as a whole, including Plaintiff's description of his level of functioning. [R. 20.]  Accordingly, the Court finds that the ALJ's weighing of Dr. Harris's opinions is supported by substantial evidence.

**RFC Determination**

28

Plaintiff contends the ALJ failed to properly assess Plaintiff's RFC by failing to include functional limitations that arise from medically determinable impairments found to be non-severe, including hepatitis C, cardiac murmur, arthritis, allergic rhinitis, and history of alcohol dependence in remission. [Doc. 12 at 9.] Additionally, Plaintiff contends the ALJ failed to consider his hand tremors, which is linked to his anxiety (determined to be a severe impairment). [*Id.* at 9–10.] Plaintiff argues that the ALJ's finding that Plaintiff had no functional limitations is an extreme conclusion to reach because Dr. Harris set forth lifting restrictions which would place Plaintiff in the light exertional category, ensuring a favorable decision due in part to his older age. [*Id.* at 11–12, 16–17.] The Commissioner contends the ALJ's finding that Plaintiff had no work related limitations as a result of his degenerative disc disease of the cervical spine, arthritis of the hands and knees, Hepatitis C, heart murmur, or hand tremors is supported by the opinion of Dr. Korn, as well as the opinions of Drs. Hughes, Novin, and Moghbeli. [Doc. 13 at 12–13.] The Court agrees with the Commissioner that the ALJ adequately assessed Plaintiff's RFC.

### ALJ's Analysis

The ALJ determined Plaintiff's RFC as follows:

> I find that the claimant has the residual functional capacity to perform work at all exertional levels as defined in 20 CFR 404.1567, with moderate mental limitations but in spite of these he can concentrate, persist and work at pace to do simple, routine repetitive tasks at up to level three commonsense reasoning per the DOT, for extended periods say 2-hour periods in an 8-hour day, have no direct contact with the public, but can interact appropriately with co-workers and supervisors in a stable routine setting.

[R. 20.]

In assessing the severity and work-related impact of Plaintiff's non-severe impairments of degenerative disc disease of the cervical spine, arthritis of the hands and knees, Hepatitis C, heart murmur, or hand tremors, the ALJ explained as follows:

> The claimant has a history of a heart murmur and had a cardiology work-up in October 2008. Echocardiogram indicated that all four cardiac chambers were normal in size, ejection fraction was 60-70%, and pulmonary artery pressure was normal. There was evidence of mild mitral and tricuspid regurgitation. A thallium exercise stress test was negative for ischemia at 85% of maximum performance heart rate. Diagnosis was systolic murmur (Ex. 2F).
>
> Robert Hughes, M.D., a state agency medical consultant, reported in October 2010 that the claimant's alleged impairments, including the cardiac murmur, were not severe (Ex. 10 F). Homayoo Moghbeli, M.D., a specialist in physical medicine with the Office of Medical and Vocational Experts, concluded at the reconsideration level that the claimant's heart murmur is related to mild mitral and tricuspid regurgitation and is a non-severe impairment (Ex. 3A, 13F,17F). There being no evidence to the contrary, I am in agreement with their assessments.
>
> The claimant has history of hepatitis C and reported having symptoms of fatigue. He is not on any medications and has no history of treatment. There is no evidence of hepatic stigma, and liver function tests are normal. Both Dr. Hughes and Dr. Moghbeli concluded that this impairment is not severe (Ex. 3A, 10F). I find no evidence that this impairment causes any significant work-related functional limitations and am in agreement with their assessments.
>
> Barium swallow testing in March 2010 revealed diffuse esophageal spasm consistent with a motility disorder that was causing symptoms of dysphagia (Ex. 2F, p.12). The claimant reported that he takes Cardizem and Zantac for this disorder and denied having any swallowing difficulty in May 2011 (Ex. IIE, 19F). He has maintained adequate weight for height and in fact has gained 25 pounds. Dr. Hughes concluded that this is not a severe impairment (Ex. 10F). Dr. Moghbeli reported that this impairment is expected to respond to treatment and is not a severe impairment (Ex. 3A). This impairment appears to

have responded to treatment and does not cause any significant work-related functional limitations. I am, therefore, in agreement with their assessments.

The claimant also has allergic rhinitis which is treated symptomatically. Dr. Hughes concluded that this is not a severe impairment (Ex. 10F). Dr. Moghbeli reported that this impairment is expected to respond to treatment and is not a severe impairment (Ex. 3A). I find no evidence that this impairment causes any significant work-related functional limitations and am in agreement with their assessments.

The claimant also has a history of alcohol dependence, but has reported sobriety for at least the last two years. In the absence of any evidence to the contrary, I find that the claimant does not have a current problem with substance abuse which causes any significant work-related functional limitations.

The claimant testified he has a tremor in his hands and that it limits his ability to write. He reported that medications help control it.  Bruce Kofoed, Ph.D., noted tremulousness in his handwriting and drawing during the consultative examination but did not find that he had any significant limitations in this regard (Ex. 4F). Lary Korn, D.O., noted slight tremulousness of the hands without dyssynergia or dysmetria in the movement during his consultative examination. He did not find any significant limitations related to the tremor (Ex. 7F). The claimant has not been shown to have a medically determinable impairment related to a tremor of the hands which may be related to anxiety and stress.  He, further, has not been shown to have any functional limitations related to this problem which would significantly affect his ability to work (Ex. 3A, 10F).

The claimant testified that he has severe arthritis in his hands, feet, knees, and hips, which is constantly painful and causes swelling. He reported that he takes 6 to 8 Tylenol per day and Naprosyn, as prescribed, and uses a heating pad three times a week (Ex. I5E). He reported that he took his medication on the morning of the hearing and that his pain was 8 on a scale of 10.  The claimant alleged that it is difficult for him to stand or sit more than twenty minutes at a time and that he constantly changes position. He testified that he can walk one hour out of eight in a day.  He reported that he is right-hand dominant and that he has difficulty in the left hand, including loss of strength and daily swelling.  He reported that when grabbing items, he

31

must use both hands, that a ring had to be cut off because his knuckles were swollen, that he does not use a computer anymore, and that he is limited in his ability to do bookkeeping because his hands are slow. He reported that because of his chronic pain, he cannot do yard work and does not go out as much.

The medical evidence establishes that the claimant had a remote cervical MRI that showed evidence of degenerative disc disease and degenerative joint disease.    There was no follow-up indicating any further clinical problems (Ex. 1 F). X-rays taken in October 2010 showed mild bilateral degenerative changes in his knees and fingers (Ex. 5F, 6F). The claimant's primary care physician, Roslyn Harris, M.D., prescribed Relafen for the claimant's complaints of arthritis in the hands in June 2010 (Ex. 11 F). He had no specific complaints regarding arthritis in October 2011 and had normal musculoskeletal examination (Ex. 19F).

A comprehensive consultative examination by Dr. Korn in October 2010 resulted in no clinical evidence of significant musculoskeletal pathology. Examination of the upper extremities was benign in the shoulders, elbows, and wrists. His hands had a bit of enlargement of the first metacarpophalangeal joints bilaterally. Range of motion was reasonably well maintained with a 10 to 20-degree extension lag at the right first metacarpophalangeal joint to active motion. All the remaining phalangeal joints appeared to be minimally affected. Dr. Korn found no significant deformity or hypertrophy of those joints. Knee exam was completely unremarkable bilaterally. There was no significant hypertrophy, effusion, or patellofemoral crepitus. The claimant had good valgus and varus stability. The diagnoses were arthralgias and minimal mild degenerative joint disease of the hands. Dr. Korn reported that the findings on the examination did not indicate the need for permanent work restrictions or limitations (Ex. 7F).

Dr. Hughes was in agreement with the assessment of Dr. Korn (Ex. 10F). Neil Novin, M.D., a specialist in orthopedic and physical medicine with the Office of Medical and Vocational Experts, reviewed the case at the initial and reconsideration levels and reported that there was no evidence to support any restriction of the claimant's ability to lift, carry, stand, or walk. Dr. Novin reported, further, that the minimal impairment of the fingers would have no effect on fine manipulation. Dr. Novin's

32

> assessment was that the claimant's musculoskeletal impairment is not severe (Ex. 3A, 15F, 16F).  I am in agreement with the reconsideration determination that the claimant's arthritis does not cause any significant work-related functional limitations and is not a severe impairment (Ex. 3A).

[R. 13–15.]

### Discussion

In assessing RFC, the ALJ must consider limitations and restrictions imposed by all of a claimant's impairments, including those that are not severe.  SSR 96-8p, 61 Fed. Reg. 34,474–01, at  34,477 (July 2, 1996).  The ALJ must consider all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements.  *Id.* at 34,477.  SSR 96-8p specifically states, "[t]he RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  *Id.* at 34,478.

Upon review, the Court finds that the ALJ sufficiently considered the evidence of record and determined that the evidence of record did not support a finding that Plaintiff's non-severe impairments caused any significant work-related limitations.   The Court finds the ALJ considered all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements during the relevant time period.  The ALJ's decision is also sufficiently explained so as to allow the Court to track the ALJ's reasoning and be assured that all record evidence was considered and understand how the ALJ resolved conflicts in the evidence. *See Radford*, 734 F.3d at 296; *McElveen v. Colvin*, C/A No. 8:12-1340-TLW-JDA, 2013 WL 4522899, at *11 (D.S.C. Aug. 26, 2013) (as long as the ALJ discusses the conflicting evidence and explains his

reasoning, the ALJ is responsible for weighing the evidence). For these reasons, the Court finds the ALJ's RFC determination is supported by substantial evidence.

**Step Five Determination**

Plaintiff contends that two of the three occupations cited by the Vocational Expert ("VE") as being available for Plaintiff to perform actually support the conclusion that Plaintiff is disabled under Medical-Vocational Rule 202.06. [Doc. 12 at 16.] Plaintiff argues that, because Plaintiff is more than 55 years old and has no past relevant work at the unskilled level, limiting him to light exertion directs a favorable decision.[6] [*Id.* at 16–17.] The Commissioner contends Plaintiff's argument fails for two reasons: the ALJ did not find Plaintiff was limited to light work and, even if the ALJ erred in finding Plaintiff could do two of the three jobs, he properly found Plaintiff could perform one job which contradicts a finding of disability. [Doc. 13 at 19.] The Court agrees with the Commissioner.

Medical-Vocational Rule 202.00 applies where the maximum sustained work capability is limited to light work as a result of severe medically determinable impairments. See the Administration's Program Operations Manual System ("POMS") at DI 25025.005 Exhibit of Appendix 2 - Medical-Vocational Guidelines. Medical-Vocational Rule 202.00 provides that

> for individuals of advanced age who can no longer perform vocationally relevant past work and who have a history of unskilled work experience, or who have only skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity, or who have no work experience, the limitations in vocational adaptability represented by functional restriction to light work

---

[6] In his Reply brief, Plaintiff agrees that if the ALJ's RFC determination is upheld, the alleged error at Step 5 is harmless. [Doc. 14 at 2.]

> warrant a finding of disabled. Ordinarily, even a high school education or more which was completed in the remote past will have little positive impact on effecting a vocational adjustment unless relevant work experience reflects use of such education.

*Id.*

The Court agrees with Plaintiff that, *if* the ALJ found Plaintiff was limited to light work, the Grids would indicate a finding of disability.  In this case, however, the ALJ determined, and substantial evidence supports the determination, that Plaintiff was capable of performing work at *all* functional levels with certain restrictions.  Thus, Medical-Vocational Rule 202.06 is not applicable here, and the VE's testimony, adopted by the ALJ, that Plaintiff could perform two jobs at the light exertional level (as well as one job at the medium exertional level) does not make Rule 202.06 applicable.  Accordingly, the Court finds Plaintiff's argument to be without merit.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be AFFIRMED.

IT IS SO RECOMMENDED.


January 22   , 2015                    s/Jacquelyn D. Austin
Greenville, South Carolina            United States Magistrate Judge